**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
(Eddie) Jae K. Kim (CA Bar No. 236805)
ekim@carlsonlynch.com
Scott G. Braden (CA Bar No. 305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, California 92101
Tel.:  619.762.1900
Fax:   619.756.6991

**KALIEL PLLC**
Jeffrey D. Kaliel, Esq. (CA 238293)
jkaliel@kalielpllc.com
Sophia Gold (CA 307971)
sgold@kalielpllc.com
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Tel.:  202-350-4783

*Attorneys for Plaintiffs and Proposed Class Counsel*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA F. DURKEE on Behalf of Herself All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A., and Does 1-100, inclusive,<br><br>Defendant. | Case No. **'20CV0347 JM    LL**<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

Plaintiff Andrea F. Durkee, on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

# INTRODUCTION

1. Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant Bank of America, N.A. ("BOA" or "Defendant"), arising from its unlawful assessment of inflated International Transaction Fees ("ITF").

2. BoA assesses hidden and inflated ITF to its debit and ATM card holders. For withdrawals made a foreign ATMs, BoA assesses a $5.00 out-of-network ATM transaction fee as well as an ITF that is supposed to be based on 3% of the transaction amount. These fees by BoA are in addition to the fees charged by the ATM operators. In the case of ATM withdrawals made in a foreign country, BoA is entitled to apply that 3% ITF charge *only* to the amount of the foreign currency that was withdrawn and obtained by the customer. However, BoA unlawfully inflates the ITF by applying the 3% charge not only to the value of the currency that was withdrawn, but also to fees assessed by the foreign ATM operator. Nowhere in any of BoA's account agreement authorizes BoA to assess a 3% ITF on top of the foreign ATM operator's fee, and in fact, BoA's Personal Schedule of Fees ("Schedule", attached hereto as Exhibit 1) expressly *separates* fees assessed by the ATM operator from being considered part of the funds that the 3% applies to for determining the amount of the ITF.

3. In Plaintiff's case, Plaintiff withdrew pesos in an amount equal to $5.32 (U.S. dollars) at a Mexican ATM. Based on the Schedule, BoA was only entitled to assess a $5.00 out-of-network fee and a 3% ITF based on the $5.32 that was withdrawn, which would have been $0.16. But instead, BoA also included the fees assessed by the Mexican ATM operator, including a VAT fee and an ATM surcharge fee which totaled $2.86 (U.S.). By combining the withdrawal amount ($5.32) with the ATM operator fees ($2.86), and then assessing the 3% to determine the amount of the ITF, BoA assessed

$0.25 in ITF instead of the $0.16 that it was entitled to under the customer account agreement.

4. While international transaction fees appear at first to be a small, negligible amount, hidden and inflated international transaction fees have been the subject of substantial litigation due to the significant harm it causes banking customers, in aggregate, throughout the country. The 1% international transaction fees assessed by VISA International alone resulted in $424 million in revenue in 2004—which was nearly 30% of its revenue that year. BoA itself has been the subject of such lawsuits relating to international transaction fees for its credit cards, including as a defendant in a multi-district litigation that resulted in a $336 million class-wide settlement that was paid out to over 10 million banking customers. Defendant is now charging hidden and inflated ITF to its debit and ATM card holders.

5. Plaintiff, and other BoA customers, has been injured by BoA's improper practices which breach BoA's own customer agreement. On behalf of herself and the proposed Classes (defined below), Plaintiff seeks damages, restitution, and injunctive relief for BoA's breach of contract and violation of California consumer protection statutes.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than BoA.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because BoA is subject to personal jurisdiction here and regularly conducts business in this District, and because the Plaintiff resides in this District.

## PARTIES

8. Plaintiff is a citizen of San Diego, California.

9. Defendant BoA regularly and systematically operates retail banking branch locations throughout the State of California, including in this judicial District, and provides banking services to its customers, including members of the putative Class.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.    Prior Extensive Litigation Regarding Foreign Transaction Fees**

10. Expensive and undisclosed foreign transaction fees have resulted in tremendous harm to consumers throughout the country. In fact, in 2001, a multidistrict litigation was established in the Southern District of New York, entitled *In Re: Currency Conversion Fee Antitrust Litigation*, MDL No. 1401. The plaintiffs alleged that credit cards agreements and statements poorly disclosed international transaction fees and that credit card companies colluded in fixing the fees at an inflated amount. Specifically, the complaints alleged that VISA and MasterCard charged a collusively set base international transaction fee equal to 1% of the amount of the foreign currency transaction. In addition, the MDL defendant banks tacked on an additional collusively set international transaction fee of their own, generally 2%. The plaintiffs alleged that VISA and MasterCard networks actively colluded with their member banks and assisted in implementing and facilitating these "second tier" foreign transaction fees by amending their rules and procedures to accommodate these fees, and by colluding with the MDL defendant banks to charge these fees. (*See Ross v. American Express Company*, Case No. 1:04CV05723, 2010 WL 6500949 (S.D.N.Y.) (the first amended class action complaint).)

11. Though the 1-3% amount is seemingly a small amount, the fees add up for the credit card companies. The 1% currency exchange fees gave VISA International $424 million in revenue in 2004, one of the years covered in the lawsuit. That was nearly 30% of its revenue that year.[1] Many banks charged an even higher percent on top of VISA's 1% fee. Ultimately, the MDL resulted in a class-wide settlement of $336 million

---

[1] https://www.latimes.com/archives/la-xpm-2008-jan-06-tr-insider6-story.html

in 2006. In 2012, the settlement checks were disseminated to over 10 million banking customers.[2]

12. The banks that were defendants in the MDL and part of the settlement included BoA, Citibank, Diners Club, Discover, HSBC, MBNA, Providian, and Defendant BoA.

13. This action, unlike *In Re: Currency Conversion Fee Antitrust Litigation*, does not concern the assessment of international transaction fees on credit card holders, but instead concerns an equally pernicious and pervasive practice by BoA: the assessment of hidden and inflated ITF on debit and ATM card holders such as Plaintiff.

## II. The Terms of BoA's Personal Schedule of Fees

14. On page 9 of BoA's Personal Schedule of Fees, BoA sets forth the terms of the ITF:

| International Transaction Fee | 3% of the U.S. dollar amount of the transaction | • Fee applies if you use your card to purchase goods or services in a foreign currency or in U.S. dollars with a foreign merchant (a "Foreign Transaction"). Foreign Transactions include internet transactions made in the U.S. but with a merchant who processes the transaction in a foreign country.<br>• Fee also applies if you use your card to obtain foreign currency from an ATM. Visa® or Mastercard® converts the transaction into a U.S. dollar amount, and the International Transaction Fee applies to that converted U.S. dollar amount. ATM fees may also apply to ATM transactions. See ATM Fees section.<br>• See disclosure information that accompanied your card for more information about this fee. |
|---|---|---|

15. It is evident from the express terms of this provision, as well as throughout the rest of the agreement, that the "transaction" to which the 3% is to be applied is the withdrawal of foreign currency at foreign ATM machines, and the "amount of the transaction" refers to the amount/value of the foreign currency that was withdrawn from the foreign ATM machine. In the description of the fee itself, "transaction" refers to "obtaining foreign currency from an ATM". This means that "amount of the transaction" refers to the foreign currency that the customer actually "obtained" and walked away with from the ATM machine. Nowhere does the disclosure state that ATM fees may also be

---

[2] https://topclassactions.com/lawsuit-settlements/lawsuit-news/1468-credit-card-foreign-transaction-fee-settlement-checks-arrive/; https://www.bigclassaction.com/settlement/currency-conversion-fee-settlement.php?ref=rss

4
CLASS ACTION COMPLAINT

included along with the withdrawal amount to apply the 3% to determine the amount of the ITF.

16. The same provision also states that "ATM fees may also apply to ATM transactions", while directing the customer to view the subsequent section on "ATM Fees". In so doing, BoA is specifically separating out any type of ATM fees from consideration of being part of the "transaction" to which the 3% ITF applies. Stated inversely, if BoA wanted to include any type of ATM fees as being a part of the total transaction amount for which the 3% ITF would apply, it would have specifically and expressly stated so, instead of actually stating that ATM fees would be determined and applied separately from the 3% ITF.

17. Indeed, these other ATM fees are entirely accounted for in the separate section on page 10 of the agreement, entitled "ATM Fees", where BOA specifically and separately and apart from any mention of the ITF the very fees which were assessed to Plaintiff by the ATM operator (in relevant part):

**Other Account Fees and Services** (cont.)

| Fee Category | Fee Name/Description | Fee Amount | Other Important Information About This Fee |
|---|---|---|---|
| **ATM Fees**<br>**Bank of America ATM** — an ATM that prominently displays the Bank of America name and logo on the ATM<br><br>**Non-Bank of America ATM** — an ATM that does not prominently display the Bank of America name and logo on the ATM | Withdrawals, deposits, transfers, payments and balance inquiries at a Bank of America ATM | No ATM fee | • Deposits and payments may not be available at some ATMs. Transaction fees may apply to some accounts. See account descriptions in this schedule. |
| | Non-Bank of America ATM Fee for:<br>Withdrawals, transfers and balance inquiries at a non-Bank of America ATM in the U.S. | $2.50 each | • When you use a non-Bank of America ATM, you may also be charged a fee by the ATM operator or any network used and you may be charged a fee for a balance inquiry even if you do not complete a funds transfer.<br>• The non-Bank of America ATM fees do not apply at some ATMs located outside the United States. Call us before you travel internationally for current information about banks participating in the program.<br>• Non-Bank of America ATM fees are in addition to other account fees that may apply to the transaction, such as a Withdrawal Limit Fee for savings.<br>• Preferred Rewards Platinum customers using a Bank of America Debit or ATM card are not charged the non-Bank of America ATM fee for one withdrawal, transfer and balance inquiry per statement cycle from a non-Bank of America ATM in the U.S., and receive a refund of the ATM operator fee for one withdrawal, transfer and balance inquiry per statement cycle from a non-Bank of America ATM in the U.S.<br>• Preferred Rewards Platinum Honors customers using a Bank of America Debit or ATM card are not charged the non-Bank of America ATM fee for withdrawals, transfers and balance inquiries from non-Bank of America ATMs in the U.S., and receive a refund of the ATM operator fee for withdrawals, transfers and balance inquiries from non-Bank of America ATMs in the U.S.<br>• See the disclosure information that accompanied your card for other fees that may apply. |
| | Non-Bank of America ATM Fee for:<br>Withdrawals, transfers and balance inquiries at a non-Bank of America ATM in a foreign country | $5.00 each | |

18. In the section of the agreement which covers the other fees assessed by BoA for the ATM withdrawal – including the Non-Bank of America ATM Fee of $5.00 each— BoA specifically mentions that the customer may also be charged additional fees by the ATM operator. There is no mention of the 3% ITF in this entire section. There is no

indication that BoA will apply the 3% ITF to the other fees—thereby charging a fee on top of other fees. Furthermore, just as BoA did not deem it appropriate under the contract to apply the 3% ITF to any other fees listed in this section that it charges, including the $5.00 Non-Bank of America ATM Fee, BoA was likewise prohibited from applying the 3% to the fees charged by the ATM operator.

19. Indeed, BoA is consistent throughout the agreement in what it means when it uses the term "transaction", and in every such instance, the "transaction" refers to withdrawals, deposits, transfers, payments *e.g.*:

| Fee Category | Fee Name/Description | Fee Amount | Other Important Information About This Fee |
|---|---|---|---|
| ATM Fees<br>Bank of America ATM – an ATM that | Withdrawals, deposits, transfers, payments and balance inquiries at a Bank of America ATM | No ATM fee | • Deposits and payments may not be available at some ATMs. Transaction fees may apply to some accounts. See account descriptions in this schedule. |

(Schedule, at p. 9.) Meanwhile, when BoA intends to refer to fees, it clearly and expressly uses the term "transaction fees", *e.g.*:

| Fee Category | Fee Name/Description | Fee Amount | Other Important Information About This Fee |
|---|---|---|---|
| ATM Fees<br>Bank of America ATM – an ATM that | Withdrawals, deposits, transfers, payments and balance inquiries at a Bank of America ATM | No ATM fee | • Deposits and payments may not be available at some ATMs. Transaction fees may apply to some accounts. See account descriptions in this schedule. |

(Schedule, at p. 10.)

20. Therefore, in order for BoA to have been entitled to include the ATM owner's fees in applying the 3% for determining the amount of the ITF, it was required to state that "The **International Transaction Fee** would be based on 3% of the U.S. dollar amount of the withdrawal transaction and transaction fees assessed by the ATM operator." Instead, BoA explicitly separated out ATM transaction fees as "also applying" separately from the 3% ITF. In applying 3% to both the withdrawal amount and the ATM fees to determine the amount of the ITF, BoA unlawfully assesses inflated ITF to customers' accounts.

### III. Plaintiff's Experience

21. On November 25, 2019, Plaintiff was traveling out of the country in Cabo San Lucas, Mexico when she attempted to withdraw $100.00 U.S. at a local ATM

machine. Instead, she mistakenly withdrew $100.00 in pesos, which is approximately $5.32 in U.S. dollars.[3] The Mexican ATM machine assessed her a $50.00 (pesos) Value Added Tax ("VAT") and a $8.00 (pesos) withdrawal fee, for withdrawing $100.00 (pesos) from the ATM machine. On top of the fees assessed by the Mexican ATM operator, Plaintiff was also assessed additional fees by BoA, including a $5.00 (U.S.) "Non-Bank of America ATM Fee" and a $0.25 (U.S.) "International Transaction Fee", which is supposed to be based on 3% of the dollar amount that was withdrawn at a foreign ATM.

22.   The result is that in withdrawing a value of $5.32 (U.S.), Plaintiff was assessed $2.86 (U.S.) worth of fees by the Mexican ATM operator and an additional $5.25 (U.S.) worth of fees by BoA. In other words, Plaintiff was charged $8.11 (U.S.) in fees for the privilege of withdrawing $5.32 (U.S.) worth of pesos.

23.   While being assessed over 150% of a withdrawal amount by the various financial institutions involved is unconscionably exorbitant and morally questionable, the focus of this lawsuit arises from the plain meaning of BoA's customer account contracts which sets forth the amount of fees that BoA is permitted and not permitted to charge. Specifically, under the terms of its Personal Schedule of Fees, BoA was only entitled to assess the International Transaction Fee by applying the 3% to the U.S. dollar amount that Plaintiff withdrew from the Mexican ATM, but instead, BoA applied the 3% to the amount of the withdrawal plus the amount of the VAT and withdrawal surcharge fee assessed by the Mexican ATM owner. Essentially charging a fee on top of two other fees.

24.   If BoA had applied the 3% to the amount of the $5.32 (U.S.) ATM withdrawal transaction amount, then the amount of the ITF would have been $0.16 (U.S.), but instead, by applying the 3% to the ATM withdrawal transaction amount plus the VAT and withdrawal fees assessed by the Mexican ATM owner, BOA applied 3% to $8.18 (U.S.) in deriving the $0.25 (U.S.) ITF fee that it actually assessed to Plaintiff. In

---

[3] The current exchange of 18.77 pesos to a U.S. dollar (https://www.bloomberg.com/quote/USDMXN:CUR) appears to be the same at the time of the incident.

short, BOA included what BOA contractually considers separate fees from the ITF in order to artificially and unlawfully inflate the amount of the ITF.

## CLASS ALLEGATIONS

25. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

26. The proposed Classes are defined as:

- All Bank of America checking accountholders, who, within the applicable statute of limitations were assessed an International Transaction Fee for the withdrawal of foreign currency at a foreign ATM machine. (The "National Class").

- All California Bank of America checking accountholders, who, within the applicable statute of limitations were assessed an International Transaction Fee for the withdrawal of foreign currency at a foreign ATM machine. (The "California Subclass").

27. Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

28. Excluded from the Classes are BoA, its parents, subsidiaries, affiliates, officers, and directors; any entity in which BoA has a controlling interest; all customers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

29. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to BoA's records.

30. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged hidden and inflated ITF's as a result of BoA's unlawful practice. The representative Plaintiff, like all Class members, has been damaged by BoA's misconduct in that she was assessed unfair

and unconscionable fees. Furthermore, the factual basis of BoA's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

31. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

32. Among the questions of law and fact common to the Class are whether BoA:

 a. deceived consumers;

 b. breached its contract;

 c. breached its covenant of good faith and fair dealing with Plaintiff and other members of the Class through its ITF policies and practices;

 d. converted money belonging to Plaintiff and other members of the Class through its ITF policies and practices;

 e. was unjustly enriched through its ITF policies and practices; and

 f. violated the consumer protection acts of certain states through its ITF policies and practices.

33. Other questions of law and fact common to the Class include:

 a. the proper method or methods by which to measure damages, and

 b. the declaratory relief to which the Classes are entitled.

34. Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful ITF policies and practices and breaches of BoA's Personal Schedule of Fees and other related documents. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

35. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of BoA, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and BoA's misconduct will proceed without remedy.

37. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF

### Breach of Contract
### (On behalf of the Classes)

38. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

39. Plaintiff and the Class have contracted with BoA for bank account deposit, checking, ATM, and debit card services, as embodied in BoA's account agreement, Personal Schedule of Fees, and related documentation.

40. No contractual provision authorizes BoA to assess an ITF for foreign ATM withdrawals based on 3% of the amount of ATM fees assessed by the ATM operator on top of the amount of the foreign currency withdrawn and obtained by the customer, resulting in an inflated ITF assessed to customers.

41. Therefore, BoA breached the terms of its contract, which prohibits such policies and practices.

42. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Schedule and other relevant agreements.

43. Plaintiff and members of the Class have sustained damages as a result of BoA's breach of the Schedule and other relevant agreements.

## SECOND CLAIM FOR RELIEF

### Breach of the Covenant of Good Faith and Fair Dealing
### (On behalf of the Classes)

44. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

45. Plaintiff and the proposed Class have contracted with BoA for bank account deposit, checking, ATM, and debit card services, as embodied in BoA's account agreement, Personal Schedule of Fees, and related documentation.

46. Under the laws of the states where BoA does business, good faith is an element of every contract. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

47. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

48. BoA has breached the covenant of good faith and fair dealing in the Schedule through its ITF policies and practices as alleged herein.

49. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Schedule and related agreements.

50. Plaintiff and members of the Class have sustained damages as a result of BoA's breach of the covenant of good faith and fair dealing.

## THIRD CLAIM FOR RELIEF

**Conversion (On behalf of the classes)**

51. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

52. BoA had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

53. BoA has wrongfully collected inflated ITF's from Plaintiff and the members of the Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

54. BoA has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification.

55. BoA continues to retain these funds unlawfully without the consent of Plaintiffs or members of the Class.

56. BoA intends to permanently deprive Plaintiff and the members of the Class of these funds.

57. These funds are properly owned by Plaintiff and the members of the Class, not BoA, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Class.

58. Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

59. BoA has wrongfully converted these specific and readily identifiable funds.

60. BoA's wrongful conduct is continuing.

61. As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

62. By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from BoA all damages and costs permitted by law, including all amounts that BoA has wrongfully converted.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment (On behalf of the classes)

63. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

64. Plaintiff, on behalf of herself and the Class, assert a common law claim for unjust enrichment.

65. By means of BoA's wrongful conduct alleged herein, BoA knowingly provided banking services to Plaintiff and members of the Class that was unfair, unconscionable, and oppressive.

66. BoA knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, BoA acted with conscious disregard for the rights of Plaintiff and members of the Class.

67. As a result of BoA's wrongful conduct as alleged herein, BoA has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

68. BoA's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

69. Under the common law doctrine of unjust enrichment, it is inequitable for BoA to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of ATM fees on Plaintiff and members of the Class in an

unfair, unconscionable, and oppressive manner. BoA's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

70. The financial benefits derived by BoA rightfully belong to Plaintiff and members of the Class. BoA should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or inequitable sums received by BoA traceable to Plaintiff and the members of the Class.

71. Plaintiff and members of the Class have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

**Violation of California Unfair Competition Law, Unfair Prong
Business and Professions Code § 17200
(On behalf of the California Class)**

72. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

73. Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq*.

74. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

75. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

76. Defendant's conduct violates the UCL's "unfair" prong insofar as Defendant charged inflated International Transaction Fees.

77. Defendant's conduct was not motivated by any business or economic need or rationale. The harm and adverse impact of Defendant's conduct on members of the

general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

78. The harm to Plaintiff and Class members arising from Defendant's unfair practices relating to the imposition of ITF's outweighs the utility, if any, of those practices.

79. Defendant's unfair business practices relating to ITF's as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

80. Defendant's conduct was substantially injurious to consumers in that they have been forced to pay ITF's which are not disclosed in their contract with BoA.

81. As a result of Defendant's violations of the UCL's "unfair" prong, Plaintiff and members of the Class have paid, and/or will continue to pay OON Fees and thereby have suffered and will continue to suffer actual damages.

82. Defendant also committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it affirmatively and knowingly misrepresented or failed to disclose its inflation-of-ITF practices. Such representations and omissions misled Plaintiff and are likely to mislead the public.

83. In addition, Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it affirmatively and knowingly omitted disclosures that ATM transaction fees assessed by foreign ATM operators would be included as part of the 3% for determining the amount of the ITF when a customer withdraws foreign currency. Such omissions misled the Plaintiffs and are likely to mislead the public.

84. As a result of Defendant's violations of the UCL's "fraudulent" prong, Plaintiffs and members of the Class have paid, and/or will continue to pay, unreasonably excessive amounts of money for banking services and thereby have suffered and will continue to suffer actual damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays on behalf of herself and all others similarly situated, for judgment against Defendant as follows:

1. declaring BoA's International Transaction Fee policies and practices to be wrongful, unfair, and unconscionable and in breach of the Schedule and other related agreements;

2. restitution of all International Transaction Fees paid to BoA by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. disgorgement of the ill-gotten gains derived by BoA from its misconduct;

4. injunctive relief, including public injunctive relief, enjoining BoA from further engaging in its wrongful ITF practice, and requiring BofA to notify its customers of their rights regarding this improper practice, engage in a corrective marketing campaign, and amend its disclosures;

5. actual damages in an amount according to proof;

6. punitive and exemplary damages;

7. pre-judgment interest at the maximum rate permitted by applicable law;

8. costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to the account agreement, Code of Civil Procedure § 1021.5, and other applicable law; and

9. such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: February 12, 2020

**CARLSON LYNCH, LLP**
/s/ *Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
(Eddie) Jae K. Kim (CA Bar No. 236805)
ekim@carlsonlynch.com
Scott G. Braden (CA Bar No. 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Ste. 603
San Diego, California 92101
Tel.: 619.762.1900

1 | **KALIEL PLLC**
2 | Jeffrey D. Kaliel, Esq. (CA 238293)
  | jkaliel@kalielpllc.com
3 | Sophia Gold (CA 307971)
  | sgold@kalielpllc.com
4 | 1875 Connecticut Avenue NW, 10th Floor
  | Washington, DC 20009
5 | Tel.: 202-350-4783

6 | *Attorneys for Plaintiffs and*
  | *Proposed Class Counsel*