UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA F. DURKEE, on behalf of herself and all others similarly situated,<br><br>                            Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., and DOES 1-100, inclusive,<br><br>                            Defendant. | Case No.: 20-cv-00347-DMS-LL<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Pending before the Court is Defendant Bank of America's motion to dismiss Plaintiff Andera F. Durkee's First Amended Complaint ("FAC"). Plaintiff filed a response in opposition, and Defendant filed a reply. For the following reasons, the Court grants Defendant's motion to dismiss.

**I.**

**BACKGROUND**

On November 25, 2019, Plaintiff was traveling in Cabo San Lucas, Mexico and withdrew $100.00 pesos, or $5.32 U.S. dollars, from an ATM. (FAC ¶ 21). The ATM machine assessed her a $50.00 pesos Value Added Tax ("VAT") and a $8.00 pesos withdrawal fee. (*Id.*). Plaintiff refers to these as "Usage Fees." (*Id.* at ¶ 2). Plaintiff was

also assessed additional fees by Defendant, including a $5.00 U.S. dollar Non-Bank of America ATM Fee and a $0.25 U.S. dollar International Transaction Fee ("ITF"). (*Id.*). In sum, Plaintiff was charged $8.11 U.S. dollars in fees for her withdrawal of $5.32 U.S. dollars' worth of pesos. (*Id.* at ¶ 22).

Plaintiff alleges that Defendant "unlawfully inflated the amount of the ITF" and violated the applicable terms of the Deposit Agreement and Disclosures and Personal Schedule of Fees. (*Id.* at ¶¶ 2, 11). Specifically, Plaintiff alleges that the ITF "is supposed to be . . . 3% of the dollar amount that was withdrawn at a foreign ATM." (*Id.* at ¶ 21). Instead, Defendant assessed the ITF on the amount withdrawn plus the amount of Usage Fees. (*Id.* at ¶ 23). As a result, the ITF was $0.25, instead of $0.16. (*Id.* at ¶ 3). The applicable provisions of the Personal Schedule of Fees states:

| International Transaction Fee | 3% of the U.S. dollar amount of the transaction | • Fee applies if you use your card to purchase goods or services in a foreign currency or in U.S. dollars with a foreign merchant (a "Foreign Transaction"). Foreign Transactions include internet transactions made in the U.S. but with a merchant who processes the transaction in a foreign country.<br>• Fee also applies if you use your card to obtain foreign currency from an ATM. Visa® or Mastercard® converts the transaction into a U.S. dollar amount, and the International Transaction Fee applies to that converted U.S. dollar amount. ATM fees may also apply to ATM transactions. See ATM Fees section.<br>• See disclosure information that accompanied your card for more information about this fee. |
|---|---|---|

Based on these alleged facts, Plaintiff filed suit against Defendant, on behalf of herself and all others similarly situated. In her FAC, Plaintiff alleges (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) conversion. Plaintiff seeks declaratory relief, actual damages, punitive damages, attorney's fees and costs. Defendant now moves to dismiss Plaintiff's FAC for failure to state a claim.

## II.
## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences

to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court, however, need not accept all conclusory allegations as true. Rather it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.3d 1115, 1121 (9th Cir. 1992) (citation omitted). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.

### DISCUSSION

The parties agree that the relevant language in the contract imposes an ITF of "3% of the U.S. dollar amount of the transaction." (FAC, Ex. 1 at 13). The primary issue that divides the parties is whether a 'transaction' constitutes the amount of money Plaintiff withdrew from the ATM or whether it includes both the amount of money withdrawn and the Usage Fees the foreign ATM applied. Defendant argues the latter, whereas Plaintiff argues the former. Defendant further contends Plaintiff's claim for breach of implied covenant of good faith and fair dealing fails because the contract expressly permitted Defendant's actions and Plaintiff's claim for conversion is defective as a matter of law. The Court considers these arguments in turn.

**A. Breach Of Contract**

In California, "[t]he essential elements of a breach of contract claim are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.' " *Hamilton v. Greenwich Investors XXVI, LLC*, 126 Cal. Rptr. 4th 1602, 1614 (Cal. Ct. App. 2011) (quoting *Reichert v. Gen. Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968)). In interpreting a contract, "courts look first to the plain and ordinary meaning of the agreement." *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins.*

*Co.*, 88 F. Supp. 3d 1156, 1162 (S.D. Cal. 2015) (citing *Perez-Encinas v. AmerUS Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006)). "If contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Court*, 833 P.2d 1254, 1264 (Cal. 1992) (citing Cal Civ. Code § 1638)). If the contractual language is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Id.* at 1264–65 (internal quotation omitted). "A contract is ambiguous where, upon examining the contract as a whole, it is capable of two or more reasonable meanings." *Tri-Union Seafoods*, 88 F. Supp. 3d at 1162. The Court, therefore, must look to the language of the agreement to determine whether it is unambiguous.

The applicable provision of the contract states: the ITF's 'Fee Amount' is "3% of the U.S. dollar amount of the transaction. (FAC, Ex. 1, at 13). Under the header 'Other Important Information About This Fee', the contract reads: "fee applies if you use your card to purchase goods or services in a foreign currency or in U.S. dollars with a foreign merchant (a 'Foreign Transaction')." (*Id.*). The contract further states: "Fee also applies if you use your card to obtain foreign currency from an ATM. Visa or Mastercard converts the transaction into a U.S. dollar amount, and the [ITF] applies to that converted U.S. dollar amount. ATM fees may also apply to the ATM transactions." (*Id.*). The contract then refers the reader to the 'ATM Fees section', which discusses the Defendant-imposed ATM fees, including the $5.00 Non-Bank of America Teller Withdrawal Fee that was assessed on Plaintiff's foreign ATM withdrawal.

Plaintiff argues that the "commonsense meaning" of the term 'transaction' "encompass[es] an accountholder's withdrawal amount, not additional Usage Fees added on by the ATM owner." (ECF No. 15 at 9). Plaintiff contends that the term 'transaction' frequently appears alongside 'withdrawals and transfers' in the contract. (*Id.* at 11–12 (citing FAC, Ex. 1 at 10, 11, 13)). Used in this context, Plaintiff argues, 'transaction' necessarily means the withdrawal of money, not the fees imposed on the withdrawal. Plaintiff also argues that the order of the relevant contractual provisions demonstrates that "first foreign currency is obtained, then Visa/Mastercard converts the transaction, then

[Defendant] applies the ITF to that amount, and finally, 'ATM fees may also apply to the ATM transactions.' " (*Id.* at 10 (quoting FAC, Ex. 1. at 13)). Plaintiff emphasizes that the mention of ATM fees comes after the application of the ITF, which shows Defendant does not consider 'fees' to be encompassed within an 'ATM transaction'. Furthermore, Plaintiff argues, it would be reasonable for Defendant's customers to assume that the ITF is not assessed on the foreign ATM's fees because the fee is not assessed on the ATM fees imposed by Defendant. Lastly, Plaintiff cites the Merriam-Webster Dictionary's definition of 'transaction': "something transacted; especially: an exchange or transfer of goods, services, or funds." (FAC ¶ 27). Plaintiff argues that this definition supports her interpretation because Usage Fees are "a precursor or corollary to the actual 'transaction'— the foreign currency cash withdrawal." (*Id.*).

In the alternative, Plaintiff argues that the contract's language is at best ambiguous— 'transaction' can be reasonably read to support either party's interpretation. Plaintiff contends that given this ambiguity, the Court must deny Defendant's motion to dismiss for failure to state a claim. *See Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) ("Where the language leaves doubt as to the parties' intent, the motion to dismiss must be denied.") (internal citation omitted).

Defendant disagrees with Plaintiff's interpretation. Defendant contends that the ITF is clearly assessed on the amount withdrawn plus the Usage Fees because the contract states "VISA or Mastercard converts the transaction into a U.S. dollar amount, and the [ITF] applies to that converted U.S. dollar amount." (Mot. at 10 (citing FAC, Ex. 1 at 13)). Defendant argues that because the Usage Fees are "necessarily and undisputedly converted to U.S. dollars[,]" the Usage Fees are included in the transactional amount on which the ITF is assessed. (*Id.*). Defendant further argues that the dictionary definition of 'transaction' supports its interpretation: a foreign ATM's Usage Fees are assessed in 'exchange' for, or are involved in the 'transfer' of, the withdrawal of money. (*Id.* at 11). Finally, Defendant notes that the language stating "ATM Fees may also apply" clearly refers to the ATM Fees imposed by Defendant, not Usage Fees imposed by foreign ATMs.

Defendant argues this language also supports its interpretation: the ITF is not assessed on Defendant-imposed ATM Fees because those fees are not assessed in foreign currency, whereas the ITF is assessed on the Usage Fees because those fees are assessed in foreign currency. (*Id.* at 12–13).

Defendant's interpretation of the contract is the sole reasonable interpretation. The contract unambiguously states: "[The ITF] also applies if you use your card to obtain foreign currency from an ATM. Visa or Mastercard converts the transaction into a U.S. dollar amount, and the [ITF] applies to that converted U.S. dollar amount." (FAC, Ex.1 at 13). Contrary to Plaintiff's assertion and conclusory allegations, it is not the commonsense meaning of transaction to refer only to the withdrawal of money. As Defendant notes, the dictionary definition Plaintiff provides proves quite the opposite: a 'transaction' is an exchange or transfer. Here, the foreign ATM gives its user her money *in exchange for* Usage Fees. Furthermore, the Usage Fees are assessed in the foreign currency and must be converted to U.S. dollars. Since the ITF applies to the converted U.S. dollar amount, it is only reasonable to assume the ITF applies to the entire converted transaction—the amount withdrawn plus the Usage Fees. The phrase 'ATM fees may also apply' does not change the Court's conclusion. The very next sentence refers the reader to Defendant's ATM fee section, suggesting the language concerns only the ATM fees imposed by Defendant. (*Id.*). It would be unreasonable to assume that just because the ITF is not assessed on Defendant's ATM fees, it is not assessed on the foreign ATM fees, specifically when the contract explicitly states otherwise. The Court, therefore, finds no ambiguity in the contract's meaning. *See Schertzer v. Bank of Am.*, --- F. Supp. 3d ----, 2020 WL 1046890, at *14 (S.D. Cal. 2020) ("[O]nly one interpretation of the fee disclosure reasonably makes sense.") (citing *Castandea v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981)).

Furthermore, implicit in Plaintiff's argument is the proposition that the contract must state, in exact words, 'the ITF is assessed on the amount withdrawn plus the fees imposed by the foreign ATM.' This argument asks too much. *See La Jolla Beach & Tennis Club,*

*Inc. v. Indus. Indem. Co.*, 884 P.2d 1048, 1053 (Cal. 1994) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where no exists."); *Am. Alt. Ins. Corp. v. Superior Court*, 37 Cal. Rptr. 3d 918, 923 (Cal. Ct. App. 2006) ("If contractual language is clear and explicit and does not an involve an absurdity, the plain meaning governs."). It is enough that the contract's language has only one reasonable interpretation: the ITF applies to the transaction—the amount withdrawn plus the Usage Fees—converted into U.S. dollars. Defendant's motion to dismiss Plaintiff's breach of contract claim is accordingly granted.

### B. Breach Of Implied Covenant Of Good Faith And Fair Dealing

The implied covenant of good faith and fair dealing is present in all contracts. *See Marsu B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999). "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 256 (Cal. Ct. App. 1990) (emphasis in original). A breach of the implied covenant claim must "stand independently" and cannot be based "on essentially the same allegations as [a] breach of contract claim." *Schertzer*, 2020 WL 1046890, at *14.

Here, Plaintiff does not sufficiently plead a breach of the implied covenant of good faith and fair dealing. Like the plaintiff in *Schertzer*, Plaintiff has based her implied covenant claim on the same allegations as her breach of contract claim. Plaintiff does not provide any additional factual allegations pertaining to Defendant engaging in conduct that frustrates her contractual rights, other than Defendant's allegedly unlawful inflation of the ITF. (FAC ¶¶ 55–62). Therefore, Plaintiff's claim fails for the same reason her breach of contract claim fails: Defendant's assessment of the ITF did not violate the contract's terms. *See Barkan v. Health Net. of Cal., Inc.*, No. CV 18-6691, 2019 WL 1771653, at *5 (C.D. Cal. Feb. 7, 2019) (dismissing plaintiff's breach of implied covenant clam that was

"premised on the same allegations" as plaintiff's breach of contract claim). Defendant's motion to dismiss Plaintiff's breach of implied covenant claim is accordingly granted.

### C. Conversion

Plaintiff's sole remaining claim alleges conversion. California law provides that "conversion is the wrongful exercise of dominion over the property of another." *Farmers Ins. Exch. v. Zerin*, 61 Cal. Rptr. 2d 707, 709 (Cal. Ct. App. 1997) (quoting *Oakdale Village Grp. v. Fong*, 50 Cal. Rptr. 2d 810, 812 (Cal. Ct. App. 1996)). "The elements of a claim for conversion are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 167 Cal. Rptr. 3d 832, 857 (Cal. Ct. App. 2014) (internal quotations omitted).

Plaintiff's conversion claim relies on the same factual allegations as her breach of contract claim. Plaintiff alleges Defendant "has wrongfully collected inflated ITFs from Plaintiff and the Class members" and "continues to retain these funds unlawfully without Plaintiff's or Class members' consent." (FAC ¶¶ 66, 68). Given the Court's conclusion that Defendant's assessment of the ITF was within the terms of the contract, Plaintiff's conversion claim fails. Plaintiff cannot allege Defendant assessed the fee 'by a wrongful act.' As such, Defendant's motion to dismiss Plaintiff's conversion claim is granted.

### IV.
### CONCLUSION AND ORDER

For the reasons set out above, Defendant's motion to dismiss Plaintiff's FAC is granted with prejudice.

**IT IS SO ORDERED**.

Dated: August 5, 2020

Hon. Dana M. Sabraw
United States District Judge